Elizabeth K. Ehret
Attorney at Law
3800 O'Leary St., #104
Missoula, MT 59808
T: (732) 312-7400
elizabeth.k.ehret@gmail.com

Matthew Strugar
(*pro hac vice*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| RANDALL MENGES, <br> Plaintiff, <br><br> v. <br><br> TIM FOX, Attorney General of the State of Montana; GARY SEDER, Bureau Chief of the Montana Crime Information Bureau; and SARA MALIKIE, Head of the Sexual and Violent Offenders Program for the Missoula County Sheriff's Office, each in their official capacities, <br> Defendants. | Case No. 9:20-cv-178-DLC-KLD <br><br> **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

# Table of Contents

Introduction ...................................................................................... 1

Statement of Facts ........................................................................... 2

I.     Like All Other States, Montana Historically Criminalized Sex
       Acts Traditionally Associated with Homosexuality ....................... 3

II.    Montana Once Required Sex Offender Registration for Gay Sex
       but Repealed It in 1995 ................................................................ 6

III.   By Incorporating Other States' Statutes and Registration
       Schemes, Montana Continues to Require Registration for
       Decades-Old Sodomy Convictions ................................................ 6

IV.    Montana Forces Menges to Register for Engaging in Sodomy ....... 7

The Preliminary Injunction Standard ......................................... 10

Argument ......................................................................................... 11

I.     Menges is Likely to Prevail on Each of His Three Claims ........... 11

       A.    Menges is Likely to Prevail on His Substantive Due
             Process Claim Because the Supreme Court Held That the
             Conduct for Which He Is Forced to Register Is
             Constitutionally Protected ................................................. 11

             1.     *Lawrence* Facially Invalidated Sodomy-Only
                    Criminal Statutes ....................................................... 13

             2.     Forcing Menges to Register for Engaging in Sex Acts
                    Traditionally Associated with Homosexuality, When
                    He Would Not Have to Register Had He Engaged in
                    Sex Acts Traditionally Associated with
                    Heterosexuality, Violates Equal Protection ............... 17

B.      Menges Is Likely to Prevail on His Equal Protection
        Claim Because Requiring Registration for Idaho Crime
        Against Nature Convictions Creates an Arbitrary and
        Unlawful Classification That Bears No Rational
        Relationship to a Legitimate State Interest.........................18

C.      Menges Is Likely to Prevail on His Right to Privacy Claim
        Because the Montana Supreme Court Has Found that the
        Conduct for Which He Must Register is Constitutionally
        Protected..............................................................................25

II.   An Injunction is Necessary to Avoid Continuing Irreparable
      Harm...........................................................................................26

III.  The Balance of Equities Strongly Favors an Injunction ...............26

IV.   The Bond Should Be Waived ........................................................27

**Conclusion**...........................................................................................28

# Table of Authorities

## Cases

*All. for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ............................................................ 10

*Ariz. Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014) ............................................................ 27

*Baca v. Moreno Valley Unified Sch. Dist.,*
  936 F. Supp. 719 (C.D. Cal. 1996) .................................................... 27

*Bible Club v. Placentia-Yorba Linda Sch. Dist.,*
  573 F. Supp. 2d 1291 (C.D. Cal. 2008) ............................................ 28

*Bowers v. Hardwick,*
  478 U.S. 186 (1986) ........................................................... 1, 3, 5, 11

*Campbell v. Sundquist,*
  926 S.W.2d 250 (Tenn. App. 1996) ..................................................... 4

*City of Cleburne, Texas v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) .......................................................................... 18

*Commonwealth v. Wasson,*
  842 S.W.2d 487 (Ky. 1992) ................................................................. 4

*Doe v. Caldwell,*
  913 F. Supp. 2d 262 (E.D. La. 2012) ........................................... 23, 24

*Doe v. Jindal,*
  851 F. Supp. 2d 995 (E.D. La. 2012) ........................................... 23, 24

*Drakes Bay Oyster Co. v. Jewell,*
  747 F.3d 1073 (9th Cir. 2014) ............................................................ 10

*Eisenstadt v. Baird,*
    405 U.S. 438 (1972) ............................................................... 20, 23, 24

*Gryczan v. State,*
    283 Mont. 433, 942 P.2d 112 (1997).................................................. 4, 25

*Hernandez v. Sessions,*
    872 F.3d 976 (9th Cir. 2017) .............................................................. 26

*Int'l Franchise Ass'n, Inc. v. City of Seattle,*
    803 F.3d 389 (9th Cir. 2015) .............................................................. 10

*Johnson v. Couturier,*
    572 F.3d 1067 (9th Cir. 2009) ............................................................ 28

*Lawrence v. Texas,*
    539 U.S. 558 (2003) .................................................................... passim

*Limon v. Kansas,*
    539 U.S. 955 (2003) ......................................................................... 22

*Macdonald v. Moose,*
    710 F.3d 154 (4th Cir. 2013) ........................................................... 5, 16

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) .............................................................. 27

*Mohammed v. State,*
    561 So.2d 384 (Fla. Ct. App. 1990) ...................................................... 3

*Neal v. Shimoda,*
    131 F.3d 818 (9th Cir. 1997) .............................................................. 12

*Obergefell v. Hodges,*
    576 U.S. 644 (2015) ......................................................................... 15

*Plyler v. Doe,*
    457 U.S. 202 (1982) ......................................................................... 19

*Romer v. Evans*,
   517 U.S. 620 (1996) ............................................................... 18

*Skinner v. Oklahoma ex rel. Williamson*,
   316 U.S. 535 (1942) ............................................................... 19

*State v. Altwatter*,
   29 Idaho 107, 157 P. 256 (1916) ...................................... 12, 17

*State v. Limon*,
   122 P.3d 22 (Kan. 2005) ................................................... 22, 23

*Vacco v. Quill*,
   521 U.S. 793 (1997) ............................................................... 19

*Winter v. NRDC*,
   555 U.S. 7 (2008) ................................................................... 26

## Statutes

§ 45-2-101, MCA ......................................................................... 3

§ 45-5-501, MCA ....................................................................... 18

§ 45-5-505, MCA .................................................................... 3, 4

§ 46-23-501, MCA ....................................................................... 6

§ 46-23-502, MCA ....................................................................... 7

§ 46-23-504, MCA ....................................................................... 9

1995 Amendments to § 46-23-502, MCA ................................. 6

2013 amendment to § 45-2-101, MCA ...................................... 5

Idaho Code § 18-6101 ............................................................. 19

Idaho Code § 18-6605 ..................................................... 1, 7, 17

Idaho Code § 18-8301 ................................................................ 5

Idaho Code § 18-8304 ........................................................ 19, 21

Idaho Code § 18-8326 ................................................................ 5

Kan. Stat. Ann. § 21-3505 ........................................................ 5

Md. Criminal Law Code Ann. § 3-321 ...................................... 6

Mo. Rev. Stat. § 566.062............................................................. 5

Tex. Penal Code Ann. § 21.06 ................................................... 1

Va. Code Ann. § 18.2-361 .......................................................... 6

## Other Authorities

11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ........................26

Centers for Disease Control & Prevention, Sexual Behavior, *Sexual Attraction, and Sexual Orientation Among Adults Aged 18–44 in the United States: Data From the 2011–2013 National Survey of Family Growth*, 88 NAT'L VITAL HEALTH STAT. REP. 1 (2016) ...........................3

## Introduction

This case involves the State of Montana forcing Plaintiff Randall Menges to register as a sex offender for having consensual gay sex in Idaho in 1994. At that time, as it had been since the founding of the Republic, it was legal to prosecute and imprison people for engaging in gay sex. *See Bowers v. Hardwick*, 478 U.S. 186, 192–94 (1986). The zeal to criminalize homosexuality even spilled over to heterosexuals who engaged in so-called sodomy: nonprocreative sex acts traditionally associated with homosexuality. *Compare* Idaho Code § 18-6605 (criminalizing oral and anal sex between same-sex and different-sex partners) *with* Tex. Penal Code Ann. § 21.06(a) (criminalizing oral and anal sex only between same-sex partners).

That changed in 2003. In *Lawrence v. Texas*, 539 U.S. 558, 578 (2003), the U.S. Supreme Court held that anti-sodomy statutes are facially unconstitutional under the Fourteenth Amendment.

Despite this unequivocal ruling, defendants (the State)—through operation of numerous intertwined state laws—continue to impose disabilities on certain people with pre-*Lawrence* sodomy convictions by requiring them to register with the Sexual or Violent Offender Registry (SVOR). This is an unconstitutional infringement on Menges's Constitutional rights.

Registration as a sex offender burdens almost every aspect of daily life. Registration imposes onerous restrictions on Menges's public and

personal life. He moves for a preliminary injunction to stop the State from enforcing its registration scheme against him based on a conviction for having gay sex in 1994.

Menges is entitled to a preliminary injunction.

First, he will succeed on the merits because the U.S. Supreme Court and the Montana Supreme Court have long held that the U.S. and Montana Constitutions protect the conduct for which the State requires Menges to register. Moreover, requiring Menges to register when the same conduct involving vaginal sex with a different-sex partner would not trigger registration violates Menges's Equal Protection rights.

Second, the injuries to Menges's liberty that registration imposes constitute irreparable harm.

Third, a balance of the equities favors granting a preliminary injunction because it will not cause any harm to the State to comply with the U.S. and Montana Constitutions, and it serves the public interest to enforce the U.S. and Montana Supreme Courts' clear holdings.

## Statement of Facts

This case isn't likely to involve many disputed facts. The simple summary is: 1) Menges was convicted of having gay sex—a "Crime Against Nature"—in Idaho in 1994; 2) it is his only registrable

2

conviction; 3) based on that conviction, Montana forces him to register as a sex offender.

## I.     Like All Other States, Montana Historically Criminalized Sex Acts Traditionally Associated with Homosexuality

Montana once criminalized gay sex. Section 45-5-505 of the Montana Code prohibited "deviate sexual relations," which section 45-2-101 defined as "sexual contact or sexual intercourse between two persons of the same sex." It was not alone in this prescription. "Sodomy was a criminal offense at common law and was forbidden by the laws of the original 13 States when they ratified the Bill of Rights." *Bowers*, 478 U.S. at 192. "[U]ntil 1961, all 50 States outlawed sodomy." *Id.* at 193.

While it is hard to know how widespread such sexual activity was in the eighteenth, nineteenth, and twentieth centuries, twenty-first century statistics show that even heterosexual adults widely engage in oral and anal sex. Federal government survey data from 2011 to 2013 shows that 86% of women and 87% of men nationwide aged 18 to 44 had engaged in oral sex with a different-sex partner and 36% of women and 42% of men had engaged anal sex with a different-sex partner.[1]

---

[1] *See* Centers for Disease Control & Prevention, Sexual Behavior, *Sexual Attraction, and Sexual Orientation Among Adults Aged 18–44 in the United States: Data From the 2011–2013 National Survey of Family Growth*, 88 NAT'L VITAL HEALTH STAT. REP. 1 (2016), *available at* https://www.cdc.gov/nchs/data/nhsr/nhsr088.pdf. *See also Mohammed v. State*, 561 So.2d 384, 386 n.1 (Fla. Ct. App. 1990) (citing surveys showing between 85% and 87% of adults engage in oral sex).

Beginning in 1962, the tide slowly began to shift against criminalizing sex acts traditionally associated with homosexuality. That year, Illinois became the first state to decriminalize consensual sodomy. Connecticut followed nine years later. Then in the 1990s, state courts began to invalidate these prohibitions under rights to privacy provided in state constitutions. *See Campbell v. Sundquist*, 926 S.W.2d 250 (Tenn. App. 1996); *Commonwealth v. Wasson*, 842 S.W.2d 487 (Ky. 1992).

Montana was only the third state to have the judiciary declare that prohibiting all gay sex violated Montanans' rights to privacy under the Montana Constitution. In 1997, the Montana Supreme Court found that section 45-5-505 was unconstitutional under the Montana Constitution "as applied to . . . consenting adults engaging in private, same-gender, non-commercial, sexual conduct." *Gryczan v. State*, 283 Mont. 433, 456, 942 P.2d 112, 126 (1997).

Then in 2003, the U.S. Supreme Court struck down Texas's sodomy prohibition as a whole on substantive due process grounds because the "statute further[ed] no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Lawrence*, 539 U.S. at 578. In striking down the Texas law and asserting that it lacked any legitimate state interest, the Court necessarily held that any criminal statute whose only element is the commission of oral or anal sex is unconstitutional. *Id*. at 578–79. And by

4

explicitly overruling *Bowers*, 478 U.S. 186, a prior unsuccessful facial challenge to Georgia's sodomy statute, the Court held that its ruling was not limited to Texas or to laws singling out same-sex couples. The Court also emphasized that the requirement to register as a sex offender in four states, including Idaho, as a result of a sodomy conviction highlighted the "consequential nature of the punishment and the state-sponsored condemnation attendant to the criminal prohibition" of sodomy. *Lawrence*, 539 U.S. at 575–76 (citing I.C. §§ 18-8301 to 18-8326). These consequences compelled the Court to hold all anti-sodomy statutes unlawful. *Id*. at 578.

In the wake of *Lawrence*, several states repealed or amended their sodomy laws. In 2006, Missouri amended its sodomy statute to only apply to sex acts with minors less than 14 years old. *See* Mo. Rev. Stat. § 566.062. In 2010, Kansas repealed its prohibition outright. *See* Kan. Stat. Ann. § 21-3505. In 2013, Montana formally revised its law to remove the prohibition on gay sex by amending the definition of "deviate sexual intercourse" to apply only to acts of bestiality. *See* 2013 amendment to § 45-2-101, MCA (deleting "sexual contact or sexual intercourse between two persons of the same sex or" from definition of "deviate sexual relations"). In 2014, following a decision by the Fourth Circuit Court of Appeals holding that *Lawrence* rendered its prohibition on "Crime Against Nature" unconstitutional, *Macdonald v. Moose*, 710 F.3d 154 (4th Cir. 2013), *cert denied* 134 S. Ct. 200 (2013), Virginia

amended it to apply only to bestiality and incest. *See* Va. Code Ann.
§ 18.2-361. And in 2020, Maryland repealed its sodomy prohibition. *See*
Md. Criminal Law Code Ann. § 3-321.

## II.   Montana Once Required Sex Offender Registration for Gay Sex but Repealed It in 1995

Montana once mandated sex offender registration for people
convicted of having "deviate sexual relations" under Montana's statute.

But in 1995 the state legislature repealed that requirement. See
1995 Amendments to § 46-23-502, MCA (removing registration
requirement for deviate sexual intercourse between human beings but
keeping it for bestiality convictions). Since then, people convicted in
Montana of having had gay sex have not been forced to register as sex
offenders.

## III.   By Incorporating Other States' Statutes and Registration Schemes, Montana Continues to Require Registration for Decades-Old Sodomy Convictions

Invalidating and repealing Montana's sodomy prohibition—and
repealing the registration requirement for prior convictions under it—
has not fully removed forced registration for people with historical
sodomy convictions.

The Montana Sexual or Violent Offender Registration Act, § 46-
23-501, *et seq*., MCA, mandates registration in three scenarios. First, it
requires registration for all violations of Montana law that subject the

6

convicted to registration. § 46-23-502(9)(a), MCA. Second, it requires registration for an out-of-state conviction under a law that is substantially equivalent to a Montana law for which Montana requires registration. § 46-23- 502(9)(b), MCA. Third, it requires registration for an out-of-state conviction that the state of conviction requires registration for in that state. *Id.*

It is this third mechanism that creates the problem. By repealing the registration requirement for its "deviate sexual relations" convictions, Montana relieved those with historical sodomy convictions (whether originating in Montana or another jurisdiction) from registration through either of the first two mechanisms. But through the third mechanism, Montana effectively incorporates the registration requirements of every other jurisdiction (*and* incorporates the criminal offenses prompting registration in every other jurisdiction)—including any unconstitutional ones—into Montana's law.

## IV.  Montana Forces Menges to Register for Engaging in Sodomy

In late 1993, Randall Menges had consensual sex with two other males. Declaration of Randall Menges ¶ 4; Plaintiff's Request for Judicial Notice Ex. B. Idaho prosecuted and convicted him for it under its Crime Against Nature statute, I.C. § 18-6605. Menges Decl. ¶¶ 5–7; RJN Ex. A. It is his only registrable conviction. Menges Decl. ¶ 8.

7

Menges turned 18 in October 1993. *Id*. ¶ 3. He lived at Pratt Ranch in Gem County, Idaho, a 12-bed youth foster program and working ranch for troubled young men. *Id*. ¶ 2. When Menges turned 18, he remained at Pratt Ranch to keep performing ranch work. *Id*. ¶ 3.

In December 1993, the Gem County Sheriff's Department investigated a report that three males at Pratt Ranch had engaged in sexual activity with each other. RJN Ex. B. The other males were 16 years old. *Id*.; Menges Decl. ¶ 4.

The Gem County police reports reflect that the sex was consensual and that the other males were sexually active with each other before getting Menges involved. RJN Ex. B; Menges Decl ¶ 4.

Gem County charged Menges with three counts of Crime Against Nature. RNJ Ex. A; Menges Decl. ¶ 5. He reached a plea agreement with the prosecution that, in exchange for a guilty plea, the prosecutor would suggest Menges receive a term of probation. Menges Decl. ¶ 6; RJN Ex. A.

The Court instead sentenced Menges to fifteen years—a five-year determinate and ten-year indeterminate sentence. Menges Decl. ¶ 7; RJN Ex. A.

After being released from imprisonment, Menges relocated to Montana. Menges Decl. ¶ 9. As a result of his 1994 conviction for a consensual Crime Against Nature in Idaho, Montana mandated that he register on the Montana SVOR. *Id*.

In late March 2020, Menges left Montana for Washington state, in part because Washington does not require registration for Menges's 1994 conviction for consensual Crime Against Nature. *Id.* ¶ 10. He informed the Missoula County Sheriff's Department by phone that he was leaving the state, but he continues to remain on the Montana SVOR. *Id* at ¶¶ 10–11.[2]

Menges's inclusion on the Montana registry creates ongoing harm. In November 2020, the food delivery platform Postmates denied Menges employment because he was listed on the Montana registry. *Id.* ¶ 12. And in December 2020, he was denied entry to a homeless shelter on a below-freezing night because Montana marked him noncompliant with the registry. *Id.* ¶ 13. His inclusion on the registry has damaged dozens of employment opportunities and personal relationships. *Id.* ¶ 14.

Menges desires to return to Montana—preferably permanently, but at least to look for employment—but the registration statute mandates that he register if he enters the state for longer than 10 days. *Id.* ¶ 15; § 46-23-504(1)(c), MCA.

Prior to filing this lawsuit, Menges's counsel reached out to Defendant Seder in the hopes of reaching a resolution short of litigation. Strugar Decl. ¶ 3. An Assistant Attorney General with the

---

[2] For weeks Menges's counsel attempted to resolve the issue of Menges' supposedly noncompliance with Defendant Malikie at the Missoula County Sheriff's Office but received no response to repeated voicemails. Declaration of Matthew Strugar ¶¶ 5–6.

Montana Department of Justice Prosecution Services Bureau responded to Menges's counsel and was provided various documents related to Menges's Crime Against Nature conviction. *Id.* ¶ 4. While sympathetic, the Assistant Attorney General informed Menges's counsel their office required a court order to remove Menges from the registry. *Id.* He seeks that court order here.

### The Preliminary Injunction Standard

A preliminary injunction is warranted when a party (1) is likely to succeed on the merits of his claim, (2) is likely to suffer irreparable harm in the absence of preliminary relief, (3) can show that the balance of hardships tips in his favor, and (4) can show that the injunction is in the public interest. *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015). "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Preliminary injunctive relief can also be warranted where "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (citation omitted).

## Argument

I. **Menges is Likely to Prevail on Each of His Three Claims**

A. **Menges is Likely to Prevail on His Substantive Due Process Claim Because the Supreme Court Held That the Conduct for Which He Is Forced to Register Is Constitutionally Protected**

The United States Supreme Court unmistakably held in *Lawrence* that a criminal statute whose only element is the commission of oral or anal sex—a sodomy-only statute—is unconstitutional. The Court in *Lawrence* invalidated Texas's ban on gay sex based on the "right to liberty under the Due Process Clause," 539 U.S. at 578, making clear that all state statutes remaining in effect in the nation whose only element is the commission of oral or anal sex are invalid. The Court made clear that its ruling applied to all statutes barring oral and anal sex alone, overruling *Bowers*, 478 U.S. 186, which had upheld a Georgia law criminalizing consensual oral and anal sex between same-sex and different-sex partners alike. *Lawrence*, 539 U.S. at 578 ("*Bowers* was not correct when it was decided, and it is not correct today.").

Enforcement of pre-*Lawrence* sodomy convictions through the Montana SVOR is invalid under *Lawrence*. To be sure, Menges does not contend that his conviction was unconstitutional in 1994 or seek to overturn that conviction. In 1994, it was permissible for Idaho to prosecute people for having gay sex. *See Bowers*, 478 U.S. 186. All the

state needed to prove to convict him was that he had oral or anal sex. *See State v. Altwatter*, 29 Idaho 107, 157 P. 256 (1916).

But continuing to impose disabilities on Menges a quarter-century later, and 17 years after the Supreme Court's decision in *Lawrence*, for constitutionally protected activity and for a conviction under an unconstitutional statute is a continuing, ongoing violation of Menges's Substantive Due Process rights. And it is Montana's violation. The State cannot give legal effect to a conviction for what is now recognized as protected activity or under an unconstitutional statute.

*Lawrence* even addressed sex offender registries in general as an unacceptable result of sodomy convictions: "The stigma this criminal statute imposes, moreover, is not trivial. . . . [T]he convicted person would come within the [sex offender] registration laws of at least four States were he or she to be subject to their jurisdiction." 539 U.S. at 575 (citing the sex offender registration laws of four states, including Idaho). The registration requirements that attend sodomy convictions "underscore[] the consequential nature of the punishment and the state-sponsored condemnation attendant to the criminal prohibition." *Id.* at 576. As *Lawrence* made clear, any enforcement of a sodomy law, whether by prosecution or by forced registration, violates the Fourteenth Amendment.

Menges has a liberty interest in being free from the burdens of registrations. *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997). The

12

State forcing Menges onto the SVOR deprives him of due process because he must register only because of a conviction for constitutionally protected activity and under a statute that is unconstitutional.

Menges is likely to succeed on the merits of his claim that the registration requirement is unconstitutional as applied to him and his conviction for Crime Against Nature. It violates due process rights, is unconstitutional, and this Court should enjoin further enforcement.

The State may try to claim that it can force Menges onto the sex offender registry because he engaged in sex with 16-year-olds. But that argument is unavailing for two reasons: 1) *Lawrence* facially invalidated those laws whose only element was engaging in oral or anal sex; and 2) requiring Menges to register for oral or anal sex with 16-year-olds when he would not have to register for vaginal sex with 16-year-olds violates Equal Protection.

### 1. *Lawrence* Facially Invalidated Sodomy-Only Criminal Statutes

The State cannot rescue its requirement that Menges register for having gay sex based his partners being 16 years old because *Lawrence* held that a criminal statute whose only element is the commission of oral or anal sex—a sodomy-only statute—is unconstitutional.

13

The plain language of *Lawrence* shows facial invalidation. At the very outset of the majority opinion, Justice Kennedy stated: "The question before the Court is the validity of a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." *Lawrence*, 539 U.S. at 562. The Court concluded its decision in terms that unmistakably held the statute unconstitutional on its face and not just as applied to the conduct of the plaintiff in the case: "The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id*. at 578; *see also id*. at 579 (Justice O'Connor, concurring) ("I agree with the Court that Texas' statute banning same-sex sodomy is unconstitutional.").

The Supreme Court also made clear that its holding applied to all sodomy-only statutes, framing the issues presented as the validity of the statutes, not how they were applied. The Court granted certiorari on two questions related to the constitutionality of the Texas statute and a third question asking whether the Court should overrule *Bowers*. *Lawrence*, 539 U.S. at 564 (framing the questions presented). *Lawrence* found that "*Bowers* was not correct when it was decided, and it is not correct today." *Id*. at 578. The decision rendered invalid "the *laws* involved in *Bowers*" and the "power of the State to enforce these views [targeting oral and anal sex] on the whole society through operation of the criminal law." *Id*. at 567, 571 (emphasis added). Indeed, throughout

14

its analysis, the Court addressed the constitutional deficiencies of laws (plural) targeted at intimate sexual behavior. The opinion noted that "[t]he 25 States with *laws* prohibiting the relevant conduct referenced in the *Bowers* decision are reduced now to 13 [including Idaho], of which 4 enforce their *laws* only against homosexual conduct." *Id*. at 573 (emphasis added). The Court's opinion in *Lawrence* cannot be read to permit continued enforcement of sodomy-only statutes given the Court's aim, set forth in unusually candid and explicit language, to remove these laws from the books.

The Supreme Court's own descriptions of the scope of *Lawrence* confirms this reading. In *Obergefell v. Hodges*, 576 U.S. 644 (2015), for example, the case that invalidated same-sex marriage prohibitions, both the majority and the dissent spoke of *Lawrence* in broad terms and of striking down more than just the Texas statute. *See*, *e.g.*, 576 U.S. at 667 ("*Lawrence* invalidated *laws* that made same-sex intimacy a criminal act." (emphasis added)); *id*. at 661–62 ("Then, in 2003, the Court overruled *Bowers*, holding that *laws* making same-sex intimacy a crime 'demea[n] the lives of homosexual persons.'" (quoting *Lawrence*, 539 U.S. at 575) (emphasis added)); *id*. at 675 ("Although *Lawrence* elaborated its holding under the Due Process Clause, it acknowledged, and sought to remedy, the continuing inequality that resulted from *laws* making intimacy in the lives of gays and lesbians a crime against the State") (emphasis added); *id*. at 701 ("*Lawrence* relied on the position

15

that criminal sodomy *laws*, like bans on contraceptives, invaded privacy by inviting 'unwarranted government intrusions' that 'touc[h] upon the most private human conduct, sexual behavior . . . in the most private of places, the home,'" (Roberts, C.J., dissenting) (quoting *Lawrence*, 539 U.S. at 562, 567) (emphasis added)).

The only federal appellate court to evaluate the continuing validity of a sodomy-only law in the wake of *Lawrence* confirmed that *Lawrence* invalidated all such laws. In *MacDonald v. Moose*, the Fourth Circuit declared Virginia's sodomy prohibition invalid on its face in the context of a challenge to a conviction for solicitation to commit sodomy with a 17-year-old. 710 F.3d at 156. The Court held that "prohibiting sodomy between two persons without any qualification[] is facially unconstitutional" no matter the underlying conduct, even with a minor. *Id*. at 166. "Because the invalid Georgia statute in *Bowers* is materially indistinguishable from the anti-sodomy provision being challenged here, the latter provision likewise does not survive the *Lawrence* decision." *Id*. at 163.

To be sure, *Lawrence* has dictum clarifying that states are not prohibited from enacting laws that seek to protect minors from sexual exploitation or that proscribe public sex or prostitution. 539 U.S. at 578 ("The present case does not involve minors. . . . [or] persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. . . . [or] public conduct or prostitution"). But

as the Fourth Circuit explained, this dictum was the Supreme Court "reserving judgment on more carefully crafted enactments yet to be challenged." *MacDonald*, 710 F.3d at 165.

At the time of Menges's conviction, Idaho's Crime Against Nature statute, I.C. § 18-6605, criminalized, in relevant part, "the infamous crimes against nature, committed with mankind," which Idaho courts interpreted to mean oral or anal sex. *Altwatter*, 29 Idaho 107, 157 P. 256. Because the State invalidated the Idaho Crime Against Nature statute, Montana cannot force Menges to register as a sex offender for a pre-*Lawrence* conviction under that statute.

### 2. Forcing Menges to Register for Engaging in Sex Acts Traditionally Associated with Homosexuality, When He Would Not Have to Register Had He Engaged in Sex Acts Traditionally Associated with Heterosexuality, Violates Equal Protection

Even if *Lawrence* had not invalidated the Idaho Crime Against Nature statute (and even if *Lawrence* were never decided), forcing Menges to register for engaging in oral or anal sex with 16-year-old same-sex partners while the State would not require registration had he engaged in vaginal sex with a different-sex partner of the same age violates Equal Protection, as explained below.

17

**B.    Menges Is Likely to Prevail on His Equal Protection
Claim Because Requiring Registration for Idaho
Crime Against Nature Convictions Creates an
Arbitrary and Unlawful Classification That Bears No
Rational Relationship to a Legitimate State Interest**

Forcing Menges onto the SVOR violates his Equal Protection

rights because it is an arbitrary classification that is not rationally

related to any legitimate state interest.

The Equal Protection Clause requires that "all persons similarly

situated . . . be treated alike." *City of Cleburne, Texas v. Cleburne Living

Ctr.*, 473 U.S. 432, 439 (1985). A legislative classification that does not

target a suspect class or burden a fundamental right can pass

constitutional scrutiny only "so long as it bears a rational relation to

some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Menges's forced registration cannot withstand even rational basis

review because it creates an impermissible classification that has no

rational relation to any legitimate government interest.

While Menges's conviction for Crime Against Nature for having

consensual sex with 16-year-old same-sex partners triggers registration,

a conviction for consensual vaginal sex with a different-sex partner of

the same age would not. Vaginal sex between an 18-year-old male and a

16-year-old female would not be a registrable offense in Montana. In

fact, it would not be a crime at all—Montana's age of consent is 16. § 45-

5-501(1)(b)(iv), MCA. It would also not be a crime in Idaho today—Idaho

18

permits consensual vaginal sex between 18-year-olds and 16-year-olds. I.C. § 18-6101(1). In 1994, though, vaginal sex between an 18-year-old and any minor constituted statutory rape in Idaho. I.C. § 18-6101 (1994). But it still was not and has never been a registrable offense in Idaho: statutory rape is not a registrable offense for an 18-year-old defendant. I.C. § 18-8304(1)(a) (requiring registration for convictions under I.C. § "18-6101 (rape, but excluding 18-6101(1) [statutory rape] where the defendant is eighteen years of age)").

Menges's registration requirement hinges only on him having engaged in gay sex (or having engaged in sex acts traditionally associated with homosexuality, instead of sex acts traditionally associated with heterosexuality). This classification is impermissible. Requiring Menges to register while not requiring a similarly situated person who engaged in a heterosexual sex act to do the same has no rational relation to any legitimate state interest.

"States must treat like cases alike." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). As early as 1942, the Supreme Court held that imposing different restrictions on those who committed the same type of offense violates the Equal Protection Clause. *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541–42 (1942) ("When the law lays an unequal hand on those who have committed intrinsically the same quality of offense . . . it has made as invidious a discrimination as if it had selected a particular race or

19

nationality for oppressive treatment . . . . The equal protection clause would . . . be a formula of empty words if such conspicuously artificial lines could be drawn.").

When the State is targeting precisely the same conduct under different statutes—that is, where the targeted "evil, as perceived by the State, [is] identical"—it must do so equally, otherwise its actions are arbitrary and offend the Equal Protection Clause. *Eisenstadt v. Baird*, 405 U.S. 438, 454 (1972) (invalidating the criminalization of contraceptive distribution to unmarried persons, but not to married persons). "[N]othing opens the door to arbitrary action so effectively as to allow [government] officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected." *Id*.

*Eisenstadt* shows why the State may not require Menges to register as a sex offender where it does not require the same of those in similar situations involving vaginal, heterosexual sex. As with the distinction based on marital status for accessing contraception, any "evil, as perceived by the State," to Menges having gay sex with 16-year-olds, is "identical" to the "evil" of an 18-year-old having heterosexual vaginal sex with a 16-year-old. *Id*. at 454.

As Justice O'Connor found in her concurrence in *Lawrence*, the collateral consequences of a conviction, including registration for sodomy convictions, magnified the equal protection infirmity that she

20

would have relied on to strike down the statute. *See Lawrence*, 539 U.S. at 581 (O'Connor, J., concurring) ("[W]hile the penalty imposed on petitioners in this case was relatively minor, the consequences of conviction are not . . . . Indeed, were petitioners to move to one of four States, their convictions would require them to register as sex offenders to local law enforcement. *See*, *e.g.*, Idaho Code § 18-8304.") (further citations omitted).

Montana cannot legitimately claim an interest that is furthered by forcing Menges to register. To do so would contravene the principles laid out by the Supreme Court in *Skinner*, *Vacco*, and *Eisenstadt*.

This disparate treatment is especially suspect given its basis in Idaho's illegitimate, homophobic Crime Against Nature statute that purports to make felons of everyone who engages in oral or anal sex. This harsher treatment perpetuates the condemnation of nonprocreative sex and of sex particularly associated with homosexuality. *See Lawrence*, 539 U.S. at 570 (sodomy prohibitions reflect historical "condemnation of nonprocreative sex"); *id.* at 571 ("for centuries there have been powerful voices to condemn homosexual conduct as immoral"). As *Lawrence* held, the state may not "enforce these views on the whole society through operation of the criminal law." *Id.*

Other courts have found such disparate treatment between sex acts traditionally associated with homosexuality and those associated

21

with heterosexuality violates Equal Protection. In *State v. Limon*, 122 P.3d 22 (Kan. 2005), the Kansas Supreme Court held that state's more severe penalties — including a much longer prison sentence and sex offender registration, *id*. at 24 — for same-sex rather than different-sex sexual conduct by a young adult with a minor violated the guarantee of Equal Protection. Earlier in the litigation, the Kansas court rejected the defendant's Equal Protection challenge; the day after ruling in *Lawrence*, the U.S. Supreme Court granted certiorari, vacated the state court ruling, and remanded the case to the Kansas courts "for further consideration in light of *Lawrence v. Texas*." *Limon v. Kansas*, 539 U.S. 955 (2003); *see also Limon*, 122 P.3d at 24–26. The U.S. Supreme Court's remand in *Limon* shows that even where a minor is involved, imposing harsher penalties on sexual conduct between same-sex partners than on sexual conduct between similarly aged different-sex partners creates significant equal protection concerns.

On remand, the Kansas Supreme Court held that the differential treatment was unjustified by even a rational government objective, 122 P.3d at 34–38, noting, for example, that the legitimate government interest in deterring teenage pregnancy was ill-served by a statutory regime imposing less punishment on heterosexual intercourse than on sexual conduct that cannot result in pregnancy, *id*. at 37. The court held that the state's purported justifications expressed only "moral

disapproval," an illegitimate basis for the differential sanction. *Id*. at 34–35.

More recently, the U.S. District Court for the Eastern District of Louisiana analyzed the applicability of Louisiana's sex offender law to those convicted of Crime Against Nature by Solicitation (CANS) but not to those convicted under Louisiana's materially-indistinguishable Prostitution statute. The Court held that Louisiana's sex offender registry law, "which mandates sex offender registration by individuals convicted of violating the State's Crime Against Nature by Solicitation statute, but not those convicted for the identical sexual conduct under the Prostitution statute, deprived individuals of Equal Protection of the laws[.]" *Doe v. Caldwell*, 913 F. Supp. 2d 262, 265 (E.D. La. 2012); *Doe v. Jindal*, 851 F. Supp. 2d 995, 1009 (E.D. La. 2012) (finding plaintiffs entitled to judgment as a matter of law under the Equal Protection Clause).

The Louisiana district court held that the arbitrary classification of those convicted of CANS as targets of the sex offender registration law had no rational basis, because "the State cannot have a legitimate interest in imposing a sanction on one group of people and not another when the 'evil, as perceived by the State, [is] identical.'" *Jindal*, 851 F. Supp. 2d at 1006, (quoting *Eisenstadt*, 405 U.S. at 454). The court found "the State ha[d] created two classifications of similarly . . . situated individuals who were treated differently (only one class is subject to

mandatory sex offender registration).” *Id*. at 1007. And that differential treatment “ha[d]no rational relation to any legitimate government objective: there is no legitimating rationale in the record to justify targeting only those convicted of Crime Against Nature by Solicitation for mandatory sex offender registration.” *Id*. That court later ordered Louisiana officials to “cease and desist from placing any individuals convicted of Crime Against Nature by Solicitation” on the sex offender registry and to “remove Plaintiffs from any and all municipal, city and state databases which indicate that Plaintiffs were included on the [registry].” *Caldwell*, 913 F. Supp. 2d at 266.

Like Louisiana’s sex offender registry, Montana—by incorporating Idaho’s impermissible, homophobic registration scheme—classifies 18-year-olds convicted of having consensual oral or anal sex with 16-year-olds as sex offenders while not requiring registration for people of the same ages who engage in different-sex vaginal intercourse.

The State cannot have a constitutionally valid interest in requiring those who engage in homosexual sex (or sex traditionally associated with homosexuality)  to be treated differently from those who engage in heterosexual sex. This classification has no rational basis to any legitimate governmental interest, treats groups of similarly situated individuals differently, and deprives Menges of Equal Protection. *Eisenstadt*, 405 U.S. at 454; *Jindal*, 851 F. Supp. 2d at 1007.

### C.   Menges Is Likely to Prevail on His Right to Privacy Claim Because the Montana Supreme Court Has Found that the Conduct for Which He Must Register is Constitutionally Protected

Finally, Menges is likely to prevail on his state law claim that his registration violates his right to privacy under the Montana Constitution.

More than two decades ago, the Montana Supreme Court declared that the right of "consenting adults [to] engag[e] in private, same-gender, non-commercial, sexual conduct" was a fundamental right protected by Article II, Section 10 of the Montana Constitution. *Gryczan*, 283 Mont. at 456, 942 P.2d at 126.

While the decision in *Gryczan* speaks in terms of "consenting adults," there is no indication in the opinion that it intended to set up a dual system of protection for different-sex and same-same couples, with the State affording different-sex couples an age consent of 16 while mandating an age of consent of 18 for same-sex couples. Instead, the Montana Supreme Court appears to have employed "consenting adults" as a shorthand for those who reach the age of consent to engage in sexual activity. In fact, the decision repeatedly rejects the idea that the right to privacy under Article II, Section 10 should differ depending on whether the sex act is between different or same-sex couples, or depending on whether the sex is vaginal, oral, or anal. *See id.*, 283 Mont. at 450, 453, 454 942 P.2d at 122, 124, 125.

25

Counsel for Plaintiff could locate no post-*Gryczan* case where the State prosecuted a minor over the age of consent (a 16- or 17-year-old) for deviate sexual intercourse. And if the State did contend that it could prosecute or force onto sex registries people who engage in same-sex activity with minors over the age of consent while not doing the same for those who engage in different-sex vaginal intercourse, it would create the same Equal Protection issues described above.

## II.   An Injunction is Necessary to Avoid Continuing Irreparable Harm

Menges faces continuing irreparable harm because of violations of his Substantive Due Process rights. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (internal citations omitted); *see also* 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved . . . no further showing of irreparable injury is necessary.").

## III.   The Balance of Equities Strongly Favors an Injunction

In evaluating the balance of equities, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. NRDC*, 555 U.S. 7, 24 (2008) (citation omitted). The harms that sex offender

registration imposes are significant and weigh heavily in favor of injunctive relief, as explained above.

Moreover, "it is *always* in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (emphasis added) (citation omitted). Indeed, "by establishing a likelihood that [the government's] policy violates the U.S. Constitution," as Menges has here, he has "also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[T]he public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'").

## IV.   The Bond Should Be Waived

Given the rights at stake, the Court should waive the Rule 65(c) bond. "[T]o require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected . . . ." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996). "[R]equiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because . . . protection of those rights should not be contingent upon an ability to pay." *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1302

n.6 (C.D. Cal. 2008) (internal quotation marks omitted). Additionally, there is no chance of harm to the State. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). A bond is neither appropriate nor necessary in this case.

## Conclusion

Randall Menges had gay sex in 1994, at a time when this country still prosecuted people for being gay. For the crime of having gay sex, Montana continues to require that Menges register as a sex offender today—twenty-three years after *Gryczan* and seventeen years after *Lawrence*. Enough.

Because continued enforcement of the registration requirement violates Menges's Substantive Due Process rights, his Equal Protection rights, and his privacy rights, Menges respectfully requests that this Court grant his Motion for a Preliminary Injunction and preliminarily enjoin the State from requiring him to register.

Date: December 29, 2020    Respectfully submitted,

<u>/s/ Matthew Strugar</u>
Matthew Strugar
(*pro hac vice*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

Elizabeth K. Ehret

28

Attorney at Law
3800 O'Leary St., #104
Missoula, MT 59808
T: (732) 312-7400
elizabeth.k.ehret@gmail.com

*Attorneys for Plaintiff*