Elizabeth K. Ehret
Attorney at Law
3800 O'Leary St., #104
Missoula, MT 59808
T: (732) 312-7400
elizabeth.k.ehret@gmail.com

Matthew Strugar
(*pro hac vice*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| RANDALL MENGES,<br>                      Plaintiff,<br><br>v.<br><br>AUSTIN KNUDSEN, Attorney General of the State of Montana[1]; GARY SEDER, Bureau Chief of the Montana Crime Information Bureau; and SARA MALIKIE, Head of the Sexual and Violent Offenders Program for the Missoula County Sheriff's Office, each in their official capacities,<br>                      Defendants. | Case No. 9:20-cv-178-DLC-KLD<br><br>**REPLY BRIEF ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

---

[1] Austin Knudsen is substituted for former Attorney General Tim Fox. Fed. R. Civ. P. 25(d).

# Introduction

To understand the issues at stake in this litigation, it may help to remove it from the context of gay rights. Instead, consider the following: Before 1967, it was a crime in sixteen states to enter into an interracial marriage. In many of those states, it was a felony. Now imagine a couple who are convicted under Mississippi's felony prohibition against interracial marriage and serve whatever sentence the Mississippi courts imposed. Sometime later, they flee to Kentucky. Then the United States Supreme Court issues *Loving v. Virginia*, 388 U.S. 1 (1967), declaring that prohibitions on interracial marriage violate the Due Process and Equal Protection clauses of the Fourteenth Amendment. Kentucky, though, (until 2019) prohibited anyone with a felony conviction from voting.

Would the United States District Courts for the Eastern and Western Districts of Kentucky have been powerless to restore the couple's voting rights between 1967 and 2019?

Would it matter that Kentucky was applying its felony disenfranchisement law to a *Mississippi* felony?

Would the couple be required to return to Mississippi and seek post-conviction relief to obtain their voting rights in Kentucky?

Would it matter that Mississippi's post-conviction relief statute only provides jurisdiction to hear cases brought by those in custody or

1

on parole or probation and barred those who already completed their sentence? *See* Miss. Code Ann. § 99-39-5(1).

This is substantially the situation Plaintiff Randall Menges faces. Idaho convicted him of having consensual gay sex in 1994—when such prosecutions were allowed. Nine years later the Supreme Court declared that imprisoning people for having gay sex was unconstitutional. While a welcome development, this meant little for Menges. He already served his sentence and was barred by Idaho's one-year statute of limitations to seek post-conviction relief.

He moved to Montana. Montana requires Menges to register, relying on Idaho's outdated and unquestionably homophobic law requiring people convicted of having gay sex to register as sex offenders. And the State now objects because he seeks to vindicate his constitutional rights, asserting it is an issue for Idaho courts, not this Court.

The objection is unfounded. Montana is violating Menges's constitutional rights. It does not matter that Idaho is *also* violating his constitutional rights. Through this action, he challenges Montana's violation of his rights in Montana. And he does not challenge his conviction, but Montana's ongoing treatment of his conviction and the injuries that treatment creates. Because Montana is violating his rights, this Court can redress those wrongs.

Menges has standing. He is likely to prevail on each of his claims. The State's action inflicts a continuous, ongoing, daily injury to his constitutional rights. And the balance of the equities and public interest cry out for a preliminary injunction. This Court should grant Menges's motion.

## Argument

### I. Menges Does Not Challenge His Conviction

The main theme in the State's opposition brief is that Menges is seeking to challenge his 1994 conviction for crime against nature for engaging in gay sex in Gem County, Idaho. State's Br. at 2 (accusing Menges of "essentially asking this Court to rule on the constitutionality of that conviction"). He's not. He was clear about this in his opening brief: "To be sure, Menges does not contend that his conviction was unconstitutional in 1994 or seek to overturn that conviction. In 1994, it was permissible for Idaho to prosecute people for having gay sex. All the state needed to prove to convict him was that he had oral or anal sex." Menges's Opening Brief in Support of Motion for Preliminary Injunction, ECF No. 9–1, at 11–12 (internal citations omitted). Of course, this was a dark and despicable state of the law. But Menges recognizes that was the law when he was convicted, much the same way that it was legal to convict people who entered interracial marriages before *Loving*.

3

Even if he wanted to, Menges is barred from challenging his conviction. Idaho's Uniform Post-Conviction Procedure Act, I.C. §§ 19-401, *et seq.*, provides only a one-year limitation period for filing such a motion. I.C. § 19-402(a). Idaho convicted Menges in 1994. *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) wasn't decided for another 19 years.

Regardless, this case doesn't challenge that conviction. Menges served the sentences the court imposed on him and he does not ask for any money damages for his conviction or the sentence he served. Instead, he challenges the continued severe restrictions imposed on him nearly two decades after the Supreme Court invalidated the statute the State relies on to force him to register. That is a continuing harm. And, for the purpose of this case, Montana is imposing that harm, not Idaho.

## II. Menges Has Standing to Challenge Montana's Requirement that He Register

### A. Menges Challenges Montana, Not Idaho, Law

Because Menges challenges Montana law, not Idaho law, this Court should reject the State's attempt to pass the buck to Idaho for Montana's violation of Menges's constitutional rights.

Menges brings an as-applied challenge to the Montana Sexual or Violent Offender Registration Act's requirement that an individual register as a sex offender for an out-of-state conviction for which that state requires registration. § 46-23-502(9)(b), MCA. He does not challenge any Idaho law or assert any injury arising from Idaho.

4

The State argues that it is applying Idaho's registration law and Menges's qualms should be only with Idaho. Not so. Montana decided to incorporate Idaho's registration requirements into the Montana Sexual or Violent Offender Registration Act. It is Montana's law incorporating the unconstitutional Idaho scheme that Menges challenges, not any Idaho law.

Montana's registration law does not have to operate this way. North Dakota, for example, requires registration for people with out-of-state convictions that are equivalent to registrable crimes in North Dakota, but, unlike Montana, it does *not* require registration for everyone with an out-of-state conviction for which the originating state requires registration. N.D.C.C. §12.1-32-15(g). So someone with an Idaho conviction for sexual assault must register in North Dakota because North Dakota requires registration for North Dakota sexual assault convictions, and an Idaho sexual assault conviction is an equivalent to that registrable North Dakota offense. *Id*. But because North Dakota doesn't adopt wholesale the registration laws of the other states, someone like Menges with an Idaho sodomy conviction would not have to register in North Dakota because historical North Dakota sodomy convictions are not registrable offenses there. *Id*. North Dakota's statutory scheme allows it to maintain its interest in registering people who have convictions it wants people to register for

without the thorny issues of incorporating other states' registrations laws into its own code.

Until 2005, Montana's registration law operated the same way. But in 2005, Montana chose another path. *State v. Hamilton*, 164 P.3d 884, ¶ 9 (Mont. 2007) (citing § 1, Ch. 313, L.2005). Because it chose to incorporate Idaho's law into Montana law, it cannot pass the buck to Idaho to defend it. Montana controls its own lawmaking and is responsible for its own laws.

### B. The Injury Montana Imposes on Menges is Redressable in this Case Against Montana Officials

This Court can redress Menges's injury. The State's argument to the contrary misconstrues his injury, again passing the buck to Idaho.

Menges is injured by being required to register in Montana. The injury includes, among other things, providing to and maintaining with the State all manner of biographic information, notifying the State of changes in his residence, employment, or student status, and paying the State for the costs associated with this registration. Compl. ¶¶ 27–33 (citing §§ 46-23-504(3)(a–h); § 46-23-505(1); § 46-23-506(1), MCA).

Registration causes regular injuries apart from harms inflicted directly by the registration statute. In November, the Postmates delivery platform denied Menges employment—in any state—on account of Montana maintaining him on the Montana registry. Menges Declaration, ECF No. 9–2, ¶ 12. And he was thrown out of a homeless

6

shelter on a below-freezing night because Montana had marked him noncompliant with his registration requirement—an injury that flows directly from, and would not exist without, Montana's requirement that he register. *Id.* ¶ 13.

A judgment declaring that Menges's inclusion on the Montana sex offender registry is unconstitutional and enjoining the State from requiring him to register would redress the injury caused by his inclusion on the Montana registry. To be sure, Menges is *also* injured by his inclusion on other state's registries, too. Those injuries arise from the actions of other states and can be addressed in other lawsuits. But a plaintiff does not lack standing to challenge one injury because another state is imposing a similar injury. And obtaining redress for injuries caused by another state would not cure the injuries caused by Montana.

Menges is injured—he must register as a sex offender in Montana. The Montana Sexual or Violent Offender Registration Act forms the foundation of his registration requirement in Montana. It is a but-for cause of his injury. Finding the law unconstitutional as applied to him would redress this injury. This is textbook standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

## III. The State Does Not Meaningfully Contest Menges's Probability of Prevailing on Any of His Claims

In his opening brief, Menges detailed how and why he is likely to prevail on each of his claims. Opening Br. at 11–26. The State doesn't

7

engage any of these arguments or with any of the authority Menges relies on.

Menges detailed how he is likely to succeed on his substantive due process claim because the State forces him to register for his 1994 conviction for engaging in consensual gay sex. *Id.* at 11–17. In *Lawrence*, 539 U.S. at 578, the Supreme Court held that consensual oral and anal sex is protected by the Substantive Due Process and facially invalidated those laws that allowed conviction for merely engaging in such sex acts. Because the State is forcing Menges to register for being convicted of engaging in activity protected by the Fourteenth Amendment, the registration requirement violates his Fourteenth Amendment rights. Opening Br. at 11–13.

He also showed how requiring him to register violates his Equal Protection rights. In short, Menges is required to register for engaging in gay sex, or at least for engaging in sex traditionally associated with homosexuality. A heterosexual man in Menges's same situation—18-years-old at the time he had sex with a 16-year-old female partner—would not be required to register for having vaginal sex, either in Montana or Idaho. Opening Br. at 18–19 (citing § 45- 5-501(1)(b)(iv), MCA; I.C. § 18-8304(1)(a)). Because Menges's registration hinges *only* on him having engaged in gay sex (or sex acts traditionally associated with homosexuality), the classification is impermissible. *See, e.g.*, *State v. Limon*, 122 P.3d 22, 34–38 (Kan. 2005); *Limon v. Kansas*, 539 U.S.

8

955 (2003); *Doe v. Caldwell*, 913 F. Supp. 2d 262, 265 (E.D. La. 2012); *Doe v. Jindal*, 851 F. Supp. 2d 995, 1009 (E.D. La. 2012).

And he showed that his registration violates his privacy rights under the Montana constitution because the Montana Supreme Court declared that the right to engage in consensual oral and anal sex is a right protected by Article II, Section 10. Opening Br. at 25–26 (citing *Gryczan v. State*, 283 Mont. 433, 456, 942 P.2d 112, 126 (1997)).

The State doesn't contest any of this. It doesn't contest that prior to 2003 it was constitutional to convict people for having oral and anal sex. *See Bowers v. Hardwick*, 478 U.S. 186, 192–94 (1986). It doesn't contest that Idaho law allowed Idaho to obtain such convictions. I.C. § 18-6605. It doesn't contest that Idaho required and still requires people convicted under that scheme to register as sex offenders. I.C. § 18-8304(1)(a). And it doesn't contest that anyone with a registrable conviction in Idaho must register in Montana if they reside here. § 46-23-502(9)(b), MCA.

Instead, the State asserts that it has a legitimate interest in protecting its population from sex offenders and that it is administratively efficient for Montana to just require anyone with a registrable conviction from another state to register in Montana. Menges does not contest either of these point as general matters. But the State's interest in protecting the population from sex offenders *generally* is not at issue here—Menges seeks a preliminary injunction

9

only to relieve *him* from the burdens of registration because *his* registration violates his constitutional rights.

The State appears to claim that because Menges's registration is a quirk of overlapping statutes, tragedies of timing, and the function of administrative bureaucracy—and not homophobic animus—Menges will not prevail because Montana only seeks an administratively efficient system.[2] But efficient administrative systems can violate individual constitutional rights. Whether a result of homophobic animus or an accident of timing and administration, the injury to Menges is the same.

The State even appears to admit that it does nothing to screen for this potential problem. State's Br. at 9 ("If the State is required to individually assess each conviction to determine whether it falls under a statute meeting Menges's characterization or under an equivalent

---

[2] To be sure, Menges never claimed that the State's registration requirement is a result of homophobic animus. Both his Complaint and his opening brief detail the State's laudable efforts to protect and decriminalize gay life in Montana, from the 1995 repeal of the sex offender registration requirement for people convicted of "deviate sexual relations," to the 1997 ruling in *Gryczan* protecting gay sex under the Montana constitution, to the outright repeal of the statutory prohibition on consensual gay sex in 2013. That Menges is made to register seems to be an aberration. He has fallen through the gaps in the protection the State has enacted to right its past wrongs. Hopeful the State would recognize the situation for what it is, he sought to resolve the issue short of litigation. Strugar Declaration, ECF No. 9–3, at ¶¶ 3–4. The State told him he would have to file a lawsuit. *Id.* ¶ 4. So he did.

Montana offense, then the 2005 amendment requiring registration from offenders who are required to register in other jurisdictions would be meaningless."). Even Idaho, which still has a sodomy prohibition on the books and requires registration for it, claims that when someone with a sodomy conviction from another state moves there, it reviews the underlying file to determine whether the sex was consensual. Supplemental Request for Judicial Notice, Ex. A (Declaration of Carol Redding filed in *Doe v. Wasden*, Case No. 20-cv-452 (D. Idaho)) ¶¶ 18–20. If the conviction involved consensual sex, the state allegedly does not require registration. *Id.* ¶ 20. Any administrative burden required to screen for these kinds of convictions would be minor.

And it would be rare. Because discovery has not begun, Menges does not yet know the scope of the problem, but he suspects the number of other people in his situation is few-to-none. Only two states in addition to Idaho—Mississippi and South Carolina—require sex offender registration for historical sodomy convictions. Miss. Code. Ann. § 45-33-23(g)(x); S.C. Code Ann. § 23-3-430(C)(11); *see also Lawrence*, 539 U.S. at 575–76 (identifying Idaho, Mississippi, South Carolina, and Louisiana as the states that required sex offender registration for violations of consensual sodomy prohibitions at the time of the ruling; Louisiana has since repealed its requirement, *see* La. R.S. § 15:541(k))). It is doubtful that there are more than a handful of people from Idaho, Mississippi, and South Carolina with pre-*Lawrence* sodomy convictions

11

who have relocated or will relocate to Montana (if there is even a single such person other than Menges).

Regardless, an administrative burden is not a defense to violating an individual's constitutional rights. Menges detailed how he is likely to succeed on each of his claims in his opening brief. None of the State's arguments defeat that showing or even seriously engage with them. Menges is likely to prevail.

## IV. Menges's Irreparable Injury is Ongoing

In the Ninth Circuit, courts "do not require a strong showing of irreparable harm for constitutional injuries." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). Ongoing violations of constitutional rights underscore "'the need for immediate injunctive relief without further delay' as 'a direct corollary of the matter's great importance." *Id.* (quoting *Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012)).

The State's argument against Menges having an irreparable injury is a bit confounding. The State's argument appears to be that because Menges is unlikely to establish a constitutional violation, the harm is not irreparable (because it does not exist). State's Br. at 10–11.

Menges concedes that his irreparable injury depends on the Court finding that he is injured. But that's no different from any plaintiff moving for a preliminary injunction.

12

Menges does not seek any legal remedy that could make him whole at the conclusion of the litigation. He does not seek damages. He seeks equitable relief to stop an ongoing, continuous injury to his constitutional rights. This is black-letter irreparable injury. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.").

## V. The Balance of the Equities and the Public Interest Favor an Injunction

The final factors for granting a preliminary injunction require Menges to establish that the balance of the equities tip in his favor and that the requested relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Supreme Court has stated that where government actors are the party opposing a preliminary injunction, these factors tend to merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

The balance of equities and the public interest both support issuing an injunction because the State is violating Menges's constitutional rights. The "government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented." *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017) (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *Valle de Sol inc. v. Whiting*, 732 F.3d 1006, 1029

13

(9th Cir. 2013). Similarly, it is "'always in the public interest to prevent the violation of a party's constitutional rights.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

The State's argument that the equities tip in the State's favor because Menges does not currently reside in Montana misses the obvious source of Menges's injury: *the State currently has him on the registry*. The State even provides the Court a link to his registration page. State's Br. at 3 n. 2. His ongoing inclusion on the registry causes him harm—just late last year he was denied a chance to earn a living and booted from a homeless shelter because of it. This humiliation occurs daily and is ongoing, whether he lives in Montana or not, because the State insists on maintaining him on the registry.

## Conclusion

Because the sex offender registration that State forces on Menges violates substantive due process rights, his equal protection rights, and his privacy rights, Menges respectfully requests this Court grant his Motion for a Preliminary Injunction and preliminarily enjoin the State from requiring him to register.

Date: February 9, 2020        Respectfully submitted,

/s/ Matthew Strugar
Matthew Strugar
(*pro hac vice*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

Elizabeth K. Ehret
Attorney at Law
3800 O'Leary St., #104
Missoula, MT 59808
T: (732) 312-7400
elizabeth.k.ehret@gmail.com

*Attorneys for Plaintiff*

## Certificate of Compliance

Pursuant to Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and contains 3,249 words, excluding caption, certificate of service, and certificate of compliance.

## Certificate of Service

I certify that on February 9, 2021, I filed electronically the foregoing with the Clerk of the Court using the CMF/ECF filing system that served a true and correct copy of the foregoing to the CMF/ECF participants listed below:

Hannah E. Tokerud
hannah.tokerud@mt.gov

J. Stuart Segrest
ssegrest@mt.gov

*Attorneys for Defendants*

/s/ Matthew Strugar
Matthew Strugar