Elizabeth K. Ehret
Attorney at Law
3800 O'Leary St., #104
Missoula, MT 59808
T: (732) 312-7400
elizabeth.k.ehret@gmail.com

Matthew Strugar
(*pro hac vice*)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| RANDALL MENGES,<br><br>             Plaintiff,<br><br>       v.<br><br>AUSTIN KNUDSEN, Attorney General of the State of Montana[1]; GARY SEDER, Bureau Chief of the Montana Crime Information Bureau; and SARA MALIKIE, Head of the Sexual and Violent Offenders Program for the Missoula County Sheriff's Office, each in their official capacities,<br>             Defendants. | Case No. 9:20-cv-178-DLC-KLD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

---

[1]     Austin Knudsen is substituted for former Attorney General Tim Fox. Fed. R. Civ. P. 25(d).

# Table of Contents

Introduction ........................................................ 1

Statement of Facts ............................................... 2

Argument ........................................................... 4

I.    **Menges Has Standing** ................................... 5

    A.    **Menges Is Injured** ............................... 6

        1.    The State Presently Injures Menges by Putting Him on Its Sex Offender Registry.......................... 6

        2.    The State Would Injure Menges Even If It Removed Him from the Registry Today ....................... 7

    B.    **Menges's Injury is Redressable by a Favorable Judgment** ......................................... 9

        1.    Menges Challenges Montana, Not Idaho, Law...........10

        2.    The Injury Montana Imposes on Menges Is Redressable against Montana Officials ......................12

II.    **There Is No Applicable *Heck* Bar** ........................... 13

III.    **Menges States Three Claims for Relief** ................................. 16

    A.    **Menges States a Procedural Due Process Claim Because the Supreme Court Held That the Conduct for Which the State Now Forces Him to Register Is Constitutionally Protected and Because He Was Convicted pre-*Lawrence*** ................................. 16

    B.    **Menges States an Equal Protection Claims Because He Would Not Have to Register if He Had Vaginal Sex With a Sixteen-Year-Old Female** ........................... 22

C.   **Menges States a Privacy Claim Because the Montana Constitution Protects Against Enforcement of Sodomy-Only Statutes** ........................ **25**

**Conclusion** ............................................................................. **26**

# Table of Authorities

## Cases

*Bell v. City of Boise,*
　　709 F.3d 890 (9th Cir. 2013) ........................................................14

*Bowers v. Hardwick,*
　　478 U.S. 186 (1986) ..........................................................2, 17, 22

*City of Cleburne, Texas v. Cleburne Living Ctr.,*
　　473 U.S. 432 (1985) ....................................................................22

*Doe v. Caldwell,*
　　913 F. Supp. 2d 262 (E.D. La. 2012) ...........................................24

*Doe v. Jindal,*
　　851 F. Supp. 2d 995 (E.D. La. 2012) ...........................................24

*Edwards v. Balisok,*
　　520 U.S. 641 (1997) ....................................................................15

*Frontiero v. Richardson,*
　　411 U.S. 677 (1973) ....................................................................25

*Gryczan v. State,*
　　942 P.2d 112 (Mont.1997) ....................................................25, 26

*Heck v. Humphrey,*
　　512 U.S. 477 (1994) ................................................................4, 14

*Huftile v. Miccio-Fonseca,*
　　410 F.3d 1136 (9th Cir. 2005) ....................................................15

*In re R.L.C.,*
　　361 N.C. 287 (N.C. 2007) ...........................................................21

*Karenev v. State,*
　　281 S.W.3d 428 (Tex. Crim. App. 2009) ......................................21

*Lawrence v. Texas*,
539 U.S. 558 (2003) ................................................................... passim

*Limon v. Kansas*,
539 U.S. 955 (2003) .......................................................................24

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .............................................................6, 9, 12

*MacDonald v. Moose*,
710 F.3d 154 (4th Cir. 2013) ................................................19, 20, 21

*Martin v. City of Boise*,
920 F.3d 584 (9th Cir. 2019) ....................................................14, 15

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......................................................................8, 9

*N. County Commc'ns Corp v. Calif. Catalog & Technology*,
594 F.3d 1149 (9th Cir. 2010) ........................................................... 8

*Obergefell v. Hodges*,
576 U.S. 644 (2015) .......................................................................19

*Romer v. Evans*,
517 U.S. 620 (1996) .................................................................22, 24

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ........................................................... 6

*State v. Altwatter*,
157 P. 256 (1916).....................................................................13, 17

*State v. Gomez-Alas*,
477 P.3d 911 (Idaho 2020)..............................................................21

*State v. Hamilton*,
164 P.3d 884 (Mont. 2007) .............................................................11

*State v. Limon,*
    122 P.3d 22 (Kan. 2005) ...............................................................24

*United States v. Stevens,*
    559 U.S. 460 (2010) ......................................................................21

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) ........................................................................15

## Statutes

34 U.S.C. § 20901 ...............................................................................11

Idaho Code Ann. § 18-6101 (1994) .....................................................23

Idaho Code Ann. § 18-6101(1) ............................................................23

Idaho Code Ann. § 18-6605 ...........................................................13, 17

Idaho Code Ann. § 18-8304(1)(a) .......................................................23

La. R.S. § 15:541(k) ........................................................................... 1

Mont. Code Ann. § 45- 5-501(1)(b)(iv)...............................................23

Mont. Code Ann. § 46-23- 502(9)(b) ................................................1, 10

Mont. Code Ann. § 46-23-504(1)(c) ................................................... 7

Mont. Code Ann. § 46-23-504(3)(a–h) ................................................ 7

Mont. Code Ann. § 46-23-505(1) ....................................................... 7

Mont. Code Ann. § 46-23-506........................................................... 7

N. D. Cent. Code § 12.1-32-15(g) ................................................10, 11

Wis. Stat. § (1d)(b) ..........................................................................11

Wis. Stat. § (1g)(g)........................................................................11

Wis. Stat. § 301.45(1d)(am)..........................................................11

## Introduction

The question here is how courts should deal with historical sodomy convictions in the context of sex offender registration. Before the Supreme Court's 2003 decision in *Lawrence v. Texas*, thirteen states had laws that criminalized having oral or anal sex with no other elements—a "sodomy-only" statute.[2] *See* 539 U.S. 558, 573 (2003). And at that time, four states required sex offender registration for sodomy convictions. *See id.* at 575–76 (identifying laws in Idaho, Louisiana, Mississippi, and South Carolina). Three still do—Louisiana repealed its requirement. *See* La. R.S. § 15:541(k). And some states, including Montana, require sex offender registration for anyone with a conviction from another state where the originating state requires registration. Mont. Code Ann. § 46-23- 502(9)(b).

So how should Montana treat a pre-*Lawrence* sodomy conviction from Idaho, Mississippi, or South Carolina? Applying its own law, the State here says it requires registration because it meets the elements Montana law: there is (1) a conviction; (2) from another state; (3) for which that originating states requires registration. Plaintiff Randall Menges concedes that formalistic application of the law does mandate

---

[2]     It is not *exactly* true that all thirteen statutes criminalized oral and anal sex with no other elements; four states targeted only gay sex, so those statutes had another element that the participants be of the same gender. *See Lawrence*, 39 U.S. at 573. But that distinction is immaterial to this case and was immaterial to the Court's decision in *Lawrence*.

registration in this circumstance. But the problem is that it ignores the holding in *Lawrence*. The State does not appear to contest that there were convictions under sodomy-only statutes pre-*Lawrence*, that *Lawrence* found such convictions violated Substantive Due Process rights to have oral and anal sex, that three states still require registration for those pre-*Lawrence* convictions, and that Montana still requires registration for pre-*Lawrence* convictions from those three states. But if each of those things is true, then it follows that the State is requiring registration for constitutionally protected activity.

## Statement of Facts

Menges laid out the statutory scheme in detail in his motion for a preliminary injunction. He provides a sparer recitation here.

In short, sixty years ago, all state criminalized having oral and anal sex. *Bowers v. Hardwick*, 478 U.S. 186, 193 (1986) ("[U]ntil 1961, all 50 States outlawed sodomy.") While some states repealed those prohibitions or had them struck down on state constitutional grounds, others kept them. In 1986, the Supreme Court found such laws survived constitutional challenge. *Id.* at 192–94. Then in 2003, the Supreme Court reversed course and, using uncommonly stark language for the Court, found that its earlier blessing of such laws was wrong and that such statutes violated Substantive Due Process. *Lawrence*, 539 U.S. at 578 ("*Bowers* was not correct when it was decided, and it is not correct today.").

Plaintiff Randall Menges turned 18 in October 1993. Compl. ¶ 35. He lived at Pratt Ranch in Gem County, Idaho, a 12-bed youth foster program and working ranch for troubled young men. *Id.* When Menges turned 18, he remained at Pratt Ranch to keep performing ranch work. *Id.*

In December 1993, the Gem County Sheriff's Department investigated a report that three males at Pratt Ranch had sex with each other. *Id.* ¶ 36. The other males were 16 years old. *Id.*

The Complaint alleges the Gem County police reports show that the sex was consensual and that the other males were sexually active with each other before getting Menges involved. Compl. ¶ 36.[3]

Gem County charged Menges with violating Idaho's Crime Against Nature statute. *Id.* ¶ 38. He pleaded guilty to one count. *Id.*

After being released from imprisonment, Menges relocated to Montana. *Id.* ¶ 40. As a result of his 1994 Crime Against Nature conviction in Idaho, Montana mandated that he register on the Montana SVOR. *Id.* ¶ 41.

In part to escape the humiliation and disabilities imposed by registration, Menges left Montana for Washington in March 2020. *Id.* ¶ 43. He informed the Missoula County Sheriff's Department by phone

---

[3]     In connection with this motion for a preliminary injunction, Menges submitted these police reports and asked to the Court to take judicial notice of them. ECF Nos. 9-4, 9-5, 9-6.

that he was leaving the state. *Id.* He still remained on the registry. *Id.* ¶ 45.

Menges's counsel tried to have Menges removed from the Montana registry, making repeated calls to Defendant Sarah Malikie. *Id.* ¶¶ 46–47. Malikie not only refused to return Menges's counsel's calls but marked Menges noncompliant with his registration obligations in Montana. *Id.* ¶¶ 46–48.

As a result of being marked noncompliant on the Montana registry, a homeless shelter in Boise kicked Menges out of the shelter on a 28-degree December night. *Id.* ¶¶ 49. And as a result of being listed on the Montana registry (compliant or not), the food delivery platform Postmates denied Menges's application to deliver food through its platform. *Id.* ¶ 53. In other words, Montana's continuing inclusion of Menges on its registry harms him even when he is not physically present in Montana.

### Argument[4]

The Court should deny the State's motion to dismiss. Menges has standing because the State's registration scheme injures Menges and this Court can redress that injury. There is no bar to Menges obtaining relief here under *Heck v. Humphrey*, 512 U.S. 477 (1994), because he

---

[4]     The Court is familiar with the legal standards applicable to a motion to dismiss. Menges omits a detailed recitation here.

seeks prospective, not retrospective, relief. And each of his three claims state a claim for relief.

## I.   Menges Has Standing

Menges has standing for his claims against the State because registration injuries him, the State is causing that injury, and relief in this lawsuit can redress his injury. The State appears to challenge both whether the State injures Menges (an amalgam of injury and causation) and that any injury is redressable by this Court. State's MTD Br. at 5–9.

Menges is injured. His injury existed when he filed the Complaint and continues today: the State lists him as a sex offender on the Montana Sexual or Violent Offender Registry.  Compl. ¶¶ 26, 41–42, 45–49, 53–54; *see also* State's Opp. Br. to Mtn. For Preliminary Injunction, ECF No. 17, at 3 n. 2 (providing a link to Menges's still-existing entry on Montana sex offender registry[5]). And he faces future injury, too. He seeks to return to Montana but returning requires that he be subject to various the humiliations of registration. Compl. ¶¶ 50–52. The State causes these injuries.

And they are redressable by this Court. The State claims it is powerless to stop itself from injuring Menges. It's not. Montana putting

---

[5]   This link does not actually work. Presumably this is a function the State's own website, which appears to prohibit direct link to registrants' individual pages. But the Court need only type Menges's name into the State's registry page to find Menges's registration profile.

Menges on Montana's registry injures Menges. This Court can stop Montana from inflicting that injury.

## A.   Menges Is Injured

The State appears to contend that because Menges does not currently reside in Montana, he suffers no injury. State's MTD Br. at 7. This argument ignores that the State maintains Menges on its registry. And his inclusion causes injury. And even without his inclusion, he alleges a threat of future injury—if he returns to Montana to work or to seek work, as is his desire, he will be subject to the State's registration scheme and all its attendant disabilities once again.

### 1.   The State Presently Injures Menges by Putting Him on Its Sex Offender Registry

Standing turns on the facts as they existed when the plaintiff filed the complaint. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)).

When he filed his complaint, Menges had an existing injury: he had to register in Montana and the State listed him on it sex offender registry. Compl. ¶¶ 26, 41–42, 45–49, 53–54. Registration requires, among other things, providing to and maintaining with the State all manner of biographic information, notifying the State of changes in his residence, employment, or student status, and paying the State for the costs associated with this registration. Compl. ¶¶ 27–33 (citing Mont.

Code Ann. §§ 46-23-504(3)(a–h); § 46-23-505(1); § 46-23-506(1)). Despite leaving Montana, the State continues to list Menges on the registry to this day.

And Menges alleges that listing causes him continuing injury. Late last year he was denied the chance to earn a living and booted from a homeless shelter because of it. Compl. ¶¶ 49, 53. This humiliation is ongoing, whether or not he lives in Montana, because the State insists on maintaining him on the registry. *Id.* ¶ 54.

### 2. The State Would Injure Menges Even If It Removed Him from the Registry Today

Menges would have an injury even if Montana removed him from the registry because of his change of residency because he faces future injury. He fled Montana for a state that didn't require him to register because of the burdens of registration Montana forced on him. Compl. ¶ 43. He desires to return to Montana, but "[b]ecause registration burdens his everyday life and presents a significant barrier to obtaining employment, housing, or even maintaining social relationships, Menges has not returned to Montana." *Id.* ¶ 51. And the State does not dispute that he would have to register within 10 days of returning to Montana, even if he were only in the state temporarily to look for work. Compl. ¶ 52; Mont. Code Ann. § 46-23-504(1)(c).

The State's argument against Menges's future injury appears to be that because it created an injury so onerous that Menges fled the

State, Menges cannot contest that injury without subjecting himself to that injury again. The law is not nearly so ruthless.

For a dispute seeking equitable relief to be a "case or controversy," it must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (citations and internal quotation marks omitted). The dispute "must not be nebulous or contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *N. County Commc'ns Corp v. Calif. Catalog & Technology*, 594 F.3d 1149, 1154 (9th Cir. 2010) (citations omitted).

There is nothing nebulous here. Menges has been to Montana. The State forced him to register. The burdens of registration ran him out. He seeks to return. The State agrees that he would have to register if he did. There is a substantial controversy between adverse parties of

8

sufficient immediacy and reality. *MedImmune*, 549 U.S. at 127. That is all Article III requires. *Id*. at 127–30.

## B. Menges's Injury is Redressable by a Favorable Judgment

If this Court rules in Menges's favor and enjoins the State from maintaining him on the Montana sex offender registry, it would redress the injury he complains of in this action. *Lujan*, 504 U.S. at 561.[6]

The crux of the State's argument against redressability appears to be that because Idaho *also* forces Menges to register (or, perhaps, because it was the first state to require him to register), he has no injury that this Court can redress. Not so. Montana law causes Menges's injury in Montana by Montana officials. A plaintiff can suffer multiple injuries from multiple sources. So long as the Court can redress the injury caused by the defendants before it, that injury is redressable. The State is not powerless over its own laws and this Court is not powerless over these state actors.[7]

---

[6]    It is not even that is it just "likely" that a favorable judgment will cure the injury, as *Lujan* requires. *Lujan*, 504 U.S. at 561. It is certain to.

[7]    The State argued against redressibility in opposing Menges's motion for a preliminary injunction and Menges addressed redressability in his reply brief on that motion. *See* ECF No. 20 at 4–7. Because the State's motion to dismiss is potentially dispositive, Menges repeats arguments made in his earlier brief to protect against any potential waiver or forfeiture arguments.

### 1.   Menges Challenges Montana, Not Idaho, Law

Because Menges challenges Montana law, not Idaho law, this Court should reject the State's attempt to blame Idaho for Montana's violation of Menges's constitutional rights.

Menges does not challenge any Idaho law or assert any injury arising from Idaho. He brings an as-applied challenge to the Montana Sexual or Violent Offender Registration Act's requirement that an individual register as a sex offender for an out-of-state conviction for which that state requires registration. Mont. Code Ann. § 46-23-502(9)(b).

The State argues that it is applying Idaho's registration law and Menges's qualms should be only with Idaho. But Montana decided to incorporate Idaho's registration requirements into the Montana Sexual or Violent Offender Registration Act. It is Montana's law incorporating the unconstitutional Idaho scheme that Menges challenges, not any Idaho law.

Montana's registration law does not have to operate this way. North Dakota, for example, requires registration for people with out-of-state convictions equivalent to registrable crimes in North Dakota, but, unlike Montana, it does not require registration for everyone with an out-of-state conviction for which the originating state requires registration. N. D. Cent. Code § 12.1-32-15(g). So someone with an Idaho conviction for sexual assault must register in North Dakota

because North Dakota requires registration for North Dakota sexual assault convictions and an Idaho sexual assault conviction is an equivalent to that registrable North Dakota offense. *Id.* But because North Dakota doesn't adopt wholesale the registration laws of the other states, someone like Menges with an Idaho sodomy conviction would not have to register in North Dakota because historical North Dakota sodomy convictions are not registrable offenses there. *Id.* North Dakota's statutory scheme allows it to maintain its interest in registering people with convictions it wants people to register for without the thorny issues of incorporating other states' registrations laws into its own code. Wisconsin works the same way. *See* Wis. Stat. §§ 301.45(1d)(am), (1d)(b), (1g)(g).[8]

Until 2005, Montana's registration law operated like North Dakota's does today. But in 2005, Montana chose another path. *State v. Hamilton*, 164 P.3d 884, ¶ 9 (Mont. 2007) (citing § 1, Ch. 313, L.2005).

_____

[8]   The State cites SONRA—the federal Sex Offender Registration and Notification Act, 34 U.S.C. § 20901, *et seq.*—to claim that its registration scheme complies with federal law. State's MTD Br. at 13. If the State is claiming SONRA forces Montana to register anyone who moves to Montana who has a registrable offense in a different state, it is wrong. SONRA requires no such thing. That's how states like North Dakota and Wisconsin avoid requiring registration for all offenses that are registerable in the originating states. And if the State is making any other point about SONRA, it is unclear what it is. Menges doesn't allege the scheme violates SONRA. Compliance with SONRA is irrelevant.

Because it chose to incorporate Idaho's law into Montana law, Montana must defend it.

> ### 2. The Injury Montana Imposes on Menges Is Redressable against Montana Officials

This Court can redress Menges's injury. The State's argument against redressability misconstrues Menges's injury, again passing the buck to Idaho.

A judgment declaring that Menges's inclusion on the Montana sex offender registry is unconstitutional and enjoining the State from requiring him to register would redress the injury caused by his inclusion on the Montana registry. To be sure, Idaho injures Menges by including him on Idaho's registry, too. That injury arises from Idaho's actions and the District of Idaho can redress it. But a plaintiff does not lack standing to challenge one injury because another state is imposing a similar injury. And obtaining redress for injuries Idaho causes would not cure the injuries Montana causes.

Montana's registration requirement injures Menges. The Montana Sexual or Violent Offender Registration Act is a but-for cause of his injury. Finding the law unconstitutional as applied to him would redress this injury. This is textbook standing. *Lujan*, 504 U.S. at 560–61.

## II.     There Is No Applicable *Heck* Bar

Contrary to the State's claim, Menges does not attack the validity of his conviction. He made this point in his opening brief in support of his motion for a preliminary injunction, ECF No. 9–1, at 11–12, and again in his reply brief on the same motion. ECF No. 20, at 3–4. Still, the State, in its motion to dismiss, reiterates its accusation that Menges challenges his conviction. State's MTD Br. at 9.

Menges does not attack the validity of his conviction. He concedes that in 1994, states could still prosecute people just for having oral and anal sex. *See Bowers v. Hardwick*, 478 U.S. 186, 192–94 (1986). All a state needed to prove to convict was that the defendant had oral or anal sex, period. *See, e.g.*, Idaho Code Ann. § 18-6605; *State v. Altwatter*, 157 P. 256 (Idaho 1916). No matter how much he disagrees with that state of the law, Menges recognizes that Constitution has historically permitted all manner of indignities now considered backwards and reprehensible, including criminalizing homosexuality.

Menges served his time. He does not ask for money or release from the sentence the Gem County court imposed on him. He challenges the ongoing requirement that he register as a sex offender nearly two decades after the Supreme Court invalidated the statute the State relies on to force him to register.

Because Menges does not challenge his convictions but only seeks future equitable relief, *Heck v. Humphrey* does not bar his suit. In *Heck*,

13

the Supreme Court held that an inmate's section 1983 damages claims for malicious prosecution, destroying evidence, and attendant due process violations at trial were barred if his underlying conviction had not been invalidated (by successful direct appeal, executive action, or habeas relief). 512 U.S. at 480–87. The Ninth Circuit interprets *Heck* to distinguish between "retrospective relief," which can be barred by *Heck*, and "prospective relief," which is not. *Martin v. City of Boise*, 920 F.3d 584, 611–15 (9th Cir. 2019).

*Martin* shows the difference. It is an Eighth Amendment challenge to prohibitions on sleeping in public. Each of the plaintiffs had been charged with sleeping in public. They sought both "retrospective relief"—an earlier panel described this as "Plaintiffs' request for an order compelling expungement of Plaintiffs' criminal records and Plaintiffs' request for damages," *Bell v. City of Boise*, 709 F.3d 890, 895 (9th Cir. 2013)—as well "prospective relief"—namely, a declaration that the ordinance criminalizing sleeping in public violates the Eighth Amendment and an injunction against its enforcement. *Martin*, 920 F.3d at 611–15. The Ninth Circuit found that *Heck* barred the retrospective legal damages remedy because granting that relief "would imply the invalidity of a prior conviction." *Id*. at 613.

But *Heck* did not bar the equitable claims for declaratory and injunction relief: the so-called "prospective relief." While some equitable relief could show the invalidity of the conviction, that is generally

14

limited to relief from existing confinement related to that conviction. *Id.*
at 615. Because "'claims for *future* relief (which, if successful, will not
necessarily imply the invalidity of confinement or shorten its duration)
are distant from the 'core' of habeas corpus with which the *Heck* line of
cases is concerned,'" such prospective relief is "not precluded by the
*Heck* doctrine." *Id.* at 615 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82
(2005) (emphasis in *Wilkinson*)).[9]

This prospective relief is all Menges seeks. He concedes his
conviction was constitutional in 1994 and that, before *Lawrence*, he
could be convicted and confined just for engaging in oral or anal sex. He
does not seek damages for those convictions or release from any
sentence. Instead, like the plaintiffs in *Martin*, he seeks prospective
relief against having to register in the future due to Montana's
registration scheme. *Heck* does not bar such prospective relief.

---

[9]     This distinction confirmed existing Ninth Circuit precedent. In
*Huftile v. Miccio-Fonseca*, 410 F.3d 1136 (9th Cir. 2005), a plaintiff
challenged his civil commitment under California's Sexually Violent
Predators Act. The Circuit found that *Heck* precluded his claims
"seeking monetary damages and declaratory relief" but found that his
claims seeking "injunctive relief that would 'prevent[] Defendant from
inflicting further injury' upon him" would "not 'necessarily imply' the
invalidity of" his initial commitment and was therefore not barred by
*Heck*. *Id.* at 1141 (quoting *Edwards v. Balisok*, 520 U.S. 641, 648
(1997)).

## III.   Menges States Three Claims for Relief

Menges state claims for each of his three causes of action. He states claims for Fourteenth Amendment Procedural Due Process and Montana Constitution Article II, Section 10 Privacy violations because Montana forces him to register as a sex offender for having gay sex in 1994. And he states a claim for a Fourteenth Amendment Equal Protection violation because his registration hinges on him having engaged in same-sex sexual activity (or, at least, engaging in sex acts traditionally associated with homosexuality).

### A.   Menges States a Procedural Due Process Claim Because the Supreme Court Held That the Conduct for Which the State Now Forces Him to Register Is Constitutionally Protected and Because He Was Convicted pre-*Lawrence*

Menges alleges that Montana forces him to register for being convicted of having gay sex in 1994. Compl. ¶¶ 34–41. This states a claim for procedural due process. See *Lawrence*, 539 U.S. at 578.

The State's argument appears to boil down to an assertion that *Lawrence* did not invalidate sodomy-only laws but just restricted how states could use them.[10] State's MTD Br. at 9. The State is wrong, but ultimately Menges states a claim even if the State is right.

---

[10]   Although, to be fair, the State seeks to have it both ways, later arguing that "the circumstances of Menges's underlying conviction are irrelevant." State's MTD Br. at 11. But it's one or the other. If *Lawrence* restricted how states can use sodomy-only statutes, then underlying circumstances might be relevant. If *Lawrence* made sodomy-only

The State is wrong because the Supreme Court unmistakably held that a criminal statute whose only element is the commission of oral or anal sex—a sodomy-only statute—is unconstitutional. *Lawrence* invalidated Texas's ban on sodomy between same-sex partners based on the "right to liberty under the Due Process Clause," 539 U.S. at 578, making clear that all state statutes remaining in effect in the nation whose only element was the commission of oral or anal sex were invalid. The Court made clear that its ruling applied to all statutes barring oral and anal sex alone, overruling *Bowers*, 478 U.S. 186, which upheld a Georgia law criminalizing oral and anal sex between same-sex and different-sex partners alike. *Lawrence*, 539 U.S. at 578.

Idaho's Crime Against Nature statute, Idaho Code § 18-6605, criminalizes, in relevant part, "the infamous crime against nature, committed with mankind," which Idaho courts have interpreted to mean oral or anal sex. *Altwatter*, 157 P. 256. It is indistinguishable from the Georgia and Texas statutes the Supreme Court invalidated in Lawrence.

The plain language of *Lawrence*'s holding makes clear that the facial validity of Texas's statute was at stake. At the very outset of the majority opinion, the Court states: "The question before the Court is the validity of a Texas statute making it a crime for two persons of the

_____

statutes unenforceable, then the circumstances are irrelevant. The State violates Menges's substantive due process rights either way.

17

same sex to engage in certain intimate sexual conduct." *Lawrence*, 539 U.S. at 562. The Court concluded its decision in terms that held the statute unconstitutional on its face and not just as applied to the conduct of the defendants in the case: "The Texas *statute* furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id.* at 578 (emphasis added); *see also id.* at 579 (Justice O'Connor, concurring) ("I agree with the Court that Texas' statute banning same-sex sodomy is unconstitutional.").

The Supreme Court also made clear that its holding applied to all sodomy-only statutes by framing one of the issues presented as the validity of sodomy-only statutes, not how they were applied. The Court granted certiorari on two questions related to the constitutionality of the Texas statute and a third question asking whether the Court should overrule *Bowers v. Hardwick. Lawrence*, 539 U.S. at 564 (framing the questions presented). *Lawrence* found that "*Bowers* was not correct when it was decided, and it is not correct today." *Id.* at 578. The decision rendered invalid "the laws involved in *Bowers* and [*Lawrence*]" and the "power of the State to enforce these views [targeting oral and anal sex] *on the whole society* through operation of the criminal law." *Id.* at 567, 571 (emphasis added). Indeed, throughout its analysis, the Court addressed the constitutional deficiencies of laws (plural) targeted at intimate sexual behavior. *See, e.g., id.* at 567 ("The *laws* involved in *Bowers* and here are, to be sure, *statutes* that purport to do no more

18

than prohibit a particular sexual act. Their *penalties* and *purposes*, though, have more far-reaching consequences.") (emphases added); *see also Obergefell v. Hodges*, 576 U.S. 644, 661–62, 665, 667 (2015) (repeatedly characterizing *Lawrence* as striking down sodomy "laws" (plural)); *id.* at 701 (same) (Roberts, C.J., dissenting). The Court's opinion in *Lawrence* cannot be read to permit continued enforcement of sodomy-only statutes given the Court's aim, set forth in unusually candid and explicit language, to remove these law a prosecutor's quiver.

In *MacDonald v. Moose*, 710 F.3d 154 (4th Cir. 2013), *cert. denied*, 571 U.S. 829 (2003),  in the context of a conviction for solicitation to commit sodomy with a minor, the Fourth Circuit declared Virginia's sodomy prohibition invalid on its face. *Id.* at 156. The Fourth Circuit held that "prohibiting sodomy between two persons without any qualification[] is facially unconstitutional" no matter the underlying conduct, *id.* at 166. "Because the invalid Georgia statute in *Bowers* [was] materially indistinguishable from the [Virginia] anti-sodomy provision being challenged [in *MacDonald*], the [Virginia] provision likewise [did] not survive the *Lawrence* decision." *Id.* at 163.

To be sure, *Lawrence* has dictum clarifying that states are not prohibited from enacting laws that seek to protect minors from sexual exploitation or that proscribe rape, prostitution, or sex in public. 539 U.S. at 578 ("The present case does not involve minors[,] . . . persons who might be injured or coerced or who are situated in relationships

19

where consent might not easily be refused[,] . . . [or] public conduct or prostitution"). As the Fourth Circuit explained, this dictum was the Supreme Court "reserving judgment on more carefully crafted enactments yet to be challenged." *MacDonald*, 710 F.3d at 165. In other words, states can pass laws prohibiting oral sex for compensation, oral sex without consent, or oral sex with children; that ability does not mean that a total prohibition on oral sex is constitutional.

Courts are admittedly split on the issue of whether *Lawrence* invalidated all sodomy-only statutes. Some state supreme courts, including Idaho's, have found their sodomy-only laws survive *Lawrence* and that states can still enforce them where it proves, or even just alleges, lack of consent, public activity, or conduct with minors. [11] *In re*

---

[11]    This interpretation of *Lawrence* introduces a host of additional problems: when a state claims the statute can be applied in instances lacking consent, does that mean consent as defined elsewhere in the state's criminal code? At least one court has said the bar for consent is much higher for oral and anal sex than it is for vaginal sex. *Gomez-Alas*, 477 P.3d at 923–24 (Stegner, J., dissenting) (noting the majority rejected applying Idaho's consent definitions for penile-vaginal sex to the Crime Against Nature statute). When a state claims it can enforce its sodomy-only law for sex acts that involve minors, does it mean actual adults or people over the age of consent for penile-vaginal sex in that state? And does that fact that none of the supposed limitations on applying sodomy-only laws are apparent from the text of the law raise vagueness concerns? Applying this same logic, could a state pass a law outlawing *all* penile-vaginal sex and seek the judiciary's trust to only apply it circumstances that involve minors, a lack of consent, public conduct, or prostitution? Taken to its logical conclusion, wouldn't such interpretations also permit a law that prohibits all newspapers from

20

*R.L.C.*, 361 N.C. 287, 295–96 (N.C. 2007); *State v. Gomez-Alas*, 477 P.3d 911, 918–20 (Idaho 2020). Others, including the Fourth Circuit in *MacDonald*, have found that *Lawrence* invalidated sodomy-only laws and that the dicta in *Lawrence* addressed yet-to-be-challenged law that prohibit oral or anal sex with another one of those elements. *MacDonald*, 710 F.3d at 165; *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (recognizing *Lawrence* facially invalidated Texas's sodomy statute in all circumstances). The latter approach makes sense—the Court wanted to protect against a parade of horribles by saying it wasn't striking down laws that criminalized sex with children, sexual assault, or prostitution while it *was* striking down sodomy-only statutes.

But ultimately, this Court does not have to tangle with these thorny issues because Menges was convicted before *Lawrence*. Even if *Lawrence* could and did rewrite Idaho's Crime Against Nature statute to include additional elements, no state can retroactively apply *Lawrence* to keep punishing and restricting people for pre-*Lawrence* convictions. When Gem County convicted Menges, it was legal to convict people for engaging in oral or anal sex—as it had been since the

publishing, but with the trust that the executive will only enforce it against newspapers that publish obscenity or true threats? *See United States v. Stevens*, 559 U.S. 460, 480 (2010) (the constitution "protects against the Government; it does not leave us at the mercy of *noblesse oblige*"). Or even a unitary law that simply declares that the state forbids all that Constitution does not permit?

21

founding of the Republic. *See Bowers*, 478 U.S. at 192–94. Even if *Lawrence* or other cases added elements to the statute to comply with the Constitution, neither Idaho nor Montana has proven those elements against him. And he lacked any chance to present consent as a defense because it was no defense to the Crime Against Nature charge. And regardless, Menges alleges consent.[12] Compl. ¶¶ 3, 22, 37, 43, 54.

### B. Menges States an Equal Protection Claims Because He Would Not Have to Register if He Had Vaginal Sex With a Sixteen-Year-Old Female

Menges sufficiently alleges that forcing him to register violates his Equal Protection rights because it is an arbitrary classification that is not rationally related to any legitimate state interest.

The Equal Protection Clause requires that "all persons similarly situated . . . be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A legislative classification that does not target a suspect class or burden a fundamental right can pass constitutional scrutiny only "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Menges's forced registration cannot withstand even rational basis

---

[12]    The State makes a bizarre claim that Menges's allegation that he had consensual sex is a legal conclusion that this Court should disregard. State's MTD Br. at 10. It's not. It's a factual claim that this Court must accept as true on a motion to dismiss. The State's combined claims that consent is required for a sodomy conviction to be unconstitutional and that alleging consent is a legal conclusion this Court should disregard would lead to complete unreviewability.

review because it creates an impermissible classification that has no rational relation to any legitimate government interest.

While Menges's conviction for Crime Against Nature for having consensual sex with a 16-year-old same-sex partners triggers registration, a conviction for consensual vaginal sex with a different-sex partner of the same age would not. Vaginal sex between an 18-year-old male and a 16-year-old female would not be a registrable offense in Montana. It would not even be a crime in Montana—the age of consent is 16. Mont. Code Ann. § 45- 5-501(1)(b)(iv). It would also not be a crime in Idaho today—Idaho permits consensual penile-vaginal sex between 18-year-olds and 16-year-olds. Idaho Code Ann. § 18-6101(1). In 1994, though, penile-vaginal sex between an 18-year-old and any minor constituted statutory rape in Idaho. Idaho Code Ann. § 18-6101 (1994). But it *still* was not and *has never been* a registrable offense in Idaho: statutory rape is not a registrable offense for an 18-year-old defendant. Idaho Code Ann. § 18-8304(1)(a) (requiring registration for convictions under I.C. § "18-6101 (rape, but excluding [§] 18-6101(1) [statutory rape] where the defendant is eighteen years of age)").

Menges's registration requirement hinges *only* on him having engaged in gay sex (or having engaged in sex acts traditionally associated with homosexuality, instead of sex acts traditionally associated with heterosexuality). This classification is impermissible. Requiring Menges to register while not requiring a similarly situated

person who engaged in a heterosexual sex act to do the same has no rational relation to any legitimate state interest.

As Menges detailed in his motion for a preliminary injunction, several courts have found differential treatment between vaginal sex and oral or anal sex to violate equal protection, even under rational basis review. In *Limon v. Kansas*, 539 U.S. 955 (2003), the United States Supreme Court vacated and remanded a case in which Kansas imposed more severe penalties—including sex offender registration— for a young adult's same-sex rather than different-sex sexual conduct with a minor. Reconsidering the case in light of *Lawrence*, the Kansas Supreme Court found an Equal Protection violation. *State v. Limon*, 122 P.3d 22, 24 (Kan. 2005). And in *Doe v. Caldwell*, 913 F. Supp. 2d 262, 265 (E.D. La. 2012) and *Doe v. Jindal*, 851 F. Supp. 2d 995, 1009 (E.D. La. 2012), the Eastern District of Louisiana found Equal Protection violations where people convicted of vaginal-sex prostitution did not have to register as sex offenders but those engaging in oral- or anal-sex prostitution did.

The State's arguments about suspect classifications purposefully misconstrue Menges's legal theory. Laws need not target a suspect classification to trigger rational basis review. *Romer*, 517 U.S. at 631. The Complaint is clear that Menges's theory is rational basis. Compl. ¶ 66. And Menges's preliminary injunction motion also made clear his equal protection claim sought rational basis review. Menges's PI Br.,

24

ECF No. 9-1, at 18–24. The State's misplaces reliance on damages claims for Equal Protection violations involving suspect classes and animus. Plaintiffs can seek equitable relief for Equal Protection violations without alleging animus. Even Equal Protection violations based on supposedly benevolent concepts of "romantic paternalism" can and do violate Equal Protection. *Frontiero v. Richardson*, 411 U.S. 677, 684 (1973). But even if animus were required, Menges pleads it. Compl. ¶ 66.

Requiring Menges to register for having gay sex instead of heterosexual vaginal sex has no rational basis, treats similarly situated individuals differently, and deprives Menges of Equal Protection.

### C.     Menges States a Privacy Claim Because the Montana Constitution Protects Against Enforcement of Sodomy-Only Statutes

The State's motion to dismiss does not even make passing mention of Menges's privacy claim under the Montana Constitution. In any event, Menges details here why his claim is sufficient.

More than two decades ago, the Montana Supreme Court declared that the right of "consenting adults" to engage in same-gender sex was a fundamental right protected by Article II, Section 10 of the Montana Constitution. *Gryczan v. State*, 942 P.2d 112, 126 (Mont. 1997). Menges is forced to register for engaging in same-gender sex with a 16-year-old when he was 18 years old. Compl. ¶ 22.

While *Gryczan* speaks in terms of "consenting adults," there is no indication in the opinion the Montana Supreme Court intended to set up a dual system of protection for different-sex and same-same couples, with the State affording different-sex couples an age consent of 16 while mandating an age of consent of 18 for same-sex couples. Instead, the Montana Supreme Court appears to have employed "consenting adults" as a shorthand for those who reach the age of consent to engage in sexual activity. In fact, the decision repeatedly rejects the idea that the right to privacy under Article II, Section 10 should differ depending on whether the sex act is between different- or same-sex couples, or depending on whether the sex is vaginal, oral, or anal. *See id.* at 122, 124, 125. And the State does not claim that it did; in fact, it makes no argument about Menges's right to privacy claim at all.

## Conclusion

For above reasons, the Court should deny the State's motion to dismiss.

Date: March 5, 2021          Respectfully submitted,

                            /s/ Matthew Strugar
                            Matthew Strugar
                            (*pro hac vice*)
                            Law Office of Matthew Strugar
                            3435 Wilshire Blvd., Suite 2910
                            Los Angeles, CA 90010
                            T: (323) 696-2299
                            matthew@matthewstrugar.com

26

Elizabeth K. Ehret
Attorney at Law
3800 O'Leary St., #104
Missoula, MT 59808
T: (732) 312-7400
elizabeth.k.ehret@gmail.com

*Attorneys for Plaintiff*

## Certificate of Compliance

Pursuant to Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and contains 6,232 words, excluding caption, certificate of service, and certificate of compliance.

## Certificate of Service

I certify that on March 5, 2021, I filed electronically the foregoing with the Clerk of the Court using the CMF/ECF filing system that served a true and correct copy of the foregoing to the CMF/ECF participants listed below:

Hannah E. Tokerud
hannah.tokerud@mt.gov

J. Stuart Segrest
ssegrest@mt.gov

*Attorneys for Defendants*

/s/ Matthew Strugar
Matthew Strugar